# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: | : CHAPTER 13 |
| JAMES E. BENSON | : |
| DEBTOR(S) | : BANKRUPTCY NO. 07-16972  SR |
| JAMES E. BENSON | : |
| PLAINTIFF(S) | : |
| VS. | : |
| LDC COLLECTION SYSTEMS, INC. LOCKHEED MARTIN UMS CORPORATION JOHN AND JANE DOES 1-50 | : |
| DEFENDANT(S) | : ADVS. NO. 09-0151 |

# OPINION

BY: STEPHEN RASLAVICH, CHIEF UNITED STATES BANKRUPTCY JUDGE.

*Introduction*

Before the Court is the Motion of ACS State & Local Solutions, Inc. (ACS) to Dismiss for Failure to State a Claim or for More Definite Statement. The Motion is opposed by Plaintiffs. After a hearing held on August 13, 2009, the Court took the matter under advisement.

*The Complaint*

The Plaintiff has filed a two-count Complaint against LDC Collection Systems, Lockheed Martin UMS Corp., and other, unnamed defendants.[1] Count I alleges

---

[1] In its Motion, ACS identified itself as ACS State & Local Solutions, Inc., d/b/s LDC
(continued...)

violations of the Pennsylvania Fair Credit Extension Uniformity Act[2] and the Unfair Trade Practices and Consumer Protection Law.[3] Count II alleges violations of federal civil rights law. In response, LDC has filed the instant motion.[4]

*Applicable Rule of Procedure*

ACS's Motion argues that the Complaint "fails to state a claim upon which relief may by granted." B.R. 7012(b).[5] In considering a Rule 12(b)(6) motion, a court is required to "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. County of Allegheny,* 515 F.3d 224, 233 (3d Cir. 2008) (*quoting Pinker v. Roche Holdings, Ltd.,* 292 F.3d 361, 374 n. 7 (3d Cir.2007)). If a plaintiffs' assertions fail to state a legally cognizable claim, then the defendant's motion to dismiss will be granted. *Negron v. Oxford Airport Technical Services*, 2009 WL 50158 *2 (E.D.Pa.,2009). The movant has the burden of proof as to

---

[1](…continued)
Collections Systems f/k/a Lockheed Martin UMS Corp. Thus, there is but one named defendant and the John and Jane Does.

[2] 73 P.S. § 2270.1 *et seq.*

[3] 73 P.S. § 201-1. Plaintiff never explains whether the UTPCPL count is for an independent violation of that statute or a derivative violation of the FCEUA. *See* 73 P.S. § 2270.5(a) (stating that if a debt collector or creditor engages in an unfair or deceptive debt collection act or practice under the FCEUA, it shall constitute a violation of the UTPCPL).

[4] LDC pressed for dismissal of the response based on untimeliness. Because LDC could offer no proof of prejudice as a result of Plaintiff's counsel's tardiness and because the Motion will be granted in LDC's favor, the timeliness issue is moot.

[5] This rule make F.R.C.P. 12(b) applicable to adversary proceedings. F.R.C.P. 12(b)(6) provides for dismissal of a complaint for failure to state a claim upon which relief can be granted.

dismissal under this rule. *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir.1991) As to Count I, ASC does not challenge the factual sufficiency of what is alleged; rather, it argues that the facts, taken as true, fail as a matter of law. Conversely, as to Count II ACS argues that the factual allegations are insufficient to support a § 1983 claim.

*FCEUA Claim*

Count I alleges violations of the Pennsylvania Fair Credit Extension Uniformity Act (FCEUA) and the Uniform Trade Practices and Consumer Protection Law (UTPCPL). In its capacity as a "bill collector," ACS is alleged to have sent Plaintiff two dunning notices. ¶ 14. These notices are alleged to have contained gross misstatements of the law and misrepresentations concerning proper collection procedures and Plaintiff's due process rights. ¶ 16. Specifically, it is alleged that ACS represented that it could have Plaintiff's driving privileges revoked when it had no such right. ¶¶ 17-18. It is further alleged that the notices threatened to take action which ACS had no intention of taking. ¶¶ 19-20.

ACS offers a threshold argument to this count. It argues that the type of obligation involved here is not a "debt" as recognized under either statute. As a result, Plaintiff is not a "consumer" entitled to the protection of either statute. In this context, it explains, "debt" is understood to mean an obligation arising out of a consumer transaction. That involves some *pro tanto* exchange of goods and services. A parking fine, it says, is not the result of such a transaction. *See* Motion, 3-4.

Plaintiff disagrees and refers to the definition of "debt" provided in the FCEUA.

3

Among the examples of debt is included a "tax and the interest, penalties and fines" which might accrue from that tax. As to what constitutes a "consumer," Plaintiff refers to the definition found in the UTPCPL in support of his position. Plaintiff's Answer, 1-2.

*Debt and Consumer*

ACS's challenge to Count I goes to the very heart of the claim. Would a parking fine constitute a "debt" under the FCEUA? The statute defines the terms as:

> [a]n actual or alleged past due obligation, claim, demand, note or other similar liability of a consumer to pay money, arising out of a single account as a result of a purchase, lease or loan of goods, services or real or personal property for personal, family or household purposes or as a result of a loan of money or extension of credit which is obtained primarily for personal, family or household purposes, provided, however, that money which is owed or alleged to be owed as a result of a loan secured by a purchase money mortgage on real estate shall not be included within the definition of debt. The term also includes any amount owed as a tax to any political subdivision of this Commonwealth. Tax includes an assessment, any interest, penalty, fee or other amount permitted by law to be collected. Debt does not include any such amount owed to the United States or the Commonwealth.

73 P.S. § 2270.3. And it is on this definition upon which the Plaintiff seizes when arguing that the parking fine is a debt. Plaintiff believes that the fine should be construed as tax. *See* Answer, ¶ 1a. Thus, he concludes, the parking fine is a debt as defined under the FCEUA. There is, however, no case law interpreting the term as defined in that statute. ACS thus adverts to the federal Fair Debt Collection Practices

Act[6] (FDCPA), and its definition of the term "debt."[7] ACS points out that the case law interpreting "debt" under the FDCPA considers it to arise out of a *pro tanto* transaction or a service rendered.  *See* Motion, 4.

The Court concurs with ACS' position that it must look to the interpretations of "debt" under the FDCPA to determine what it means under the state law.  There are a number of reasons which support this conclusion.   Both the state and federal statute have the same purposes: to regulate consumer collection practices.  Both statutes also define the term "debt" similarly.  Finally, there is a degree of integration between the two statutes.  For example, the FCEUA makes "debt collector" liable for having violated the FDCPA.  73 P.S. § 2270.4(a)[8] Thus, the federal law necessarily informs this Court's determination of what a "debt" is under the state law as well.

*Parking Violations,*
*Debt and the FDCPA*

The Third Circuit has held that in order for a debt to arise from a transaction within the meaning of the FDCPA, the obligation must be the result of a *pro tanto* exchange.  *Staub v. Harris*, 626 F.2d 275, 278 (3d Cir. 1980) "At a minimum, the statute contemplates that the debt has arisen as a result of the rendition of a service or purchase of property or other item of value."  *Pollice v. National Tax Funding, LLP*, 225

---

[6] 15 U.S.C. § 1692 *et seq.*

[7] The term debt is defined as " any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment."  15 U.S.C. § 1692a(5)

[8] It is "creditors" who may be liable for any one of the specified infractions set forth in the next subsection.  73 P.S. § 2270.4(b)

F.3d 379, 401 (3d Cir. 2000) *citing Staub, supra* 625 F.2d at 278.  That Court has explained that:

> the legislative history indicates clearly that it is exactly such a person, *i.e.,* one who has contracted for goods or services and is unable to pay for them, that Congress intended to protect. Congress' presumption in enacting the FDCPA was that the vast majority of those who would enjoy the protection of the Act would not be "deadbeats". Congress found that in most cases consumers undertake these obligations fully intending to repay them. The legislative history attests to Congress' recognition of universal agreement among scholars, law enforcement officials and debt collectors alike that the number of persons who willfully refuse to pay just debts is minuscule, and that when default occurs, it is nearly always due to an unforseen event such as unemployment, overextension, serious illness or marital difficulties or divorce. S.Rep. No. 382, 95th Cong., 1st Sess. 3, *reprinted in* 1977 U.S.Code Cong. & Admin.News 1695, 1697.

*Zimmerman v. HBO Affiliate Group, ACS*, 834 F.2d 1163, 1168 (3d Cir.1987) (holding that FDCPA definition of debt did not include claims against persons who pirated cable tv signal)

Within this Circuit, there are no reported decisions on the question of whether a parking fine is a "debt" as defined under the FDCPA.  Elsewhere, there is.  In *Graham v. ACS State & Local Solutions, Inc.*, 2006 WL 2911780 (D.Minn.), the District Court held that parking fines were *not* debts under the FDCPA.  The District Court explained that the FDCPA applies to a consumer transaction.  *Id.*, *1  At a minimum, the District Court continued, such a transaction must involve a business dealing or other consensual consumer obligation.  *Id.*  A parking violation, it concluded,  was not part of a consumer transaction, and thus the parking violations would not give rise to debts under the statute.  *Id., *2; cf. Betts v. Equifax Credit Information Services, Inc.*, 245 F.Supp.2d

1130, 1133 (W.D.Wash.2003) (finding that motor vehicle impoundment and towing fees did not constitute a "debt," within the meaning of the FDCPA.); *accord Corridean v. Restore Financial Services*, 2007 WL 1114221 *6 (D.Or.). The Court finds this reasoning to be persuasive and will apply it to the question of whether a violation of the FCEUA has been stated.[9] Accordingly, the FCEUA claim in Count I will be dismissed.

*UTPCPL*

There is a corollary to that ruling which addresses the second cause of action in Count I, the UTPCPL claim. As noted above, a violation of the FCEUA constitutes a violation of the UTPCPL. But this Court has found that Plaintiff failed to state a FCEUA claim. That means that any UTPCPL claim must state an *independent* basis for such claim in order to avoid dismissal. It is to that question which the Court now turns.

"To bring a private cause of action under the UTPCPL, a plaintiff must show that he justifiably relied on the defendant's wrongful conduct or representation and that he suffered harm as a result of that reliance." *Pearson v. LaSalle Bank,* 2009 WL 1636037 *4 (E.D.Pa.) quoting Yocca v. Pittsburgh Steelers Sports, Inc.,* 578 Pa. 479, 854 A.2d 425, 438 (Pa.2004) (*citing Weinberg v. Sun Co.*, 565 Pa. 612, 777 A.2d 442, 446 (Pa.2001)); *see also Hunt v. United States Tobacco Co.,* 538 F.3d 217, 225 (3d Cir.2008) (holding that a plaintiff must allege justifiable reliance for all substantive subsections of the UTPCPL). Here, the FDCPA Complaint fails to allege that Plaintiff relied upon and then suffered harm as a result of any misrepresentations by the

---

[9]Similarly persuasive is an FTC Staff Opinion offered by ACS. Under the letter opinion dated September 16, 1997, the Commission staff opined that parking fines do not constitute debts under the FDCPA. *Available at* http://ftc.gov/os/statutes/fdcpa/letters/cheswort.htm

Defendant. Therefore, Plaintiff's claim under the UTPCPL will be dismissed.

*Civil Rights Count*

Count II alleges violations under federal civil rights law. Section 1983 of the Civil Rights Act of provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. The statute is based on the Fourteenth Amendment to the United States Constitution which provides that "no State shall ... deprive any person of life, liberty, or property, without due process of law ...." U.S. Const. amend. XIV, § 1. This particular Amendment governs only state action, not the actions of private citizens or organizations. *Rendell-Baker v. Kohn*, 457 U.S. 830, 837-38, 102 S.Ct. 2764, 2769, 73 L.Ed.2d 418 (1982). Section 1983 subjects to liability those who deprive persons of federal constitutional or statutory rights "under color of any statute, ordinance, regulation, custom, or usage" of a state. *See Leshko v. Servis,* 423 F.3d 337, 339 (3d Cir.2005). Actions relating to "under color of law" are the equivalent of "state action" under the Fourteenth Amendment. *Rendell-Baker,* 457 U.S. at 838, 102 S.Ct. at 2769-2770; *Benn v. Universal Health Sys., Inc.,* 371 F.3d 165, 169 n. 1 (3d Cir.2004). Accordingly, to state a claim of liability under § 1983, Plaintiff must allege that he was deprived of a federal constitutional or statutory right by a *state actor. Leshko,* 423 F.3d at 339.

LDC's objection goes to the sufficiency of what is alleged here. It insists that Plaintiff has not alleged any of the required elements of a civil rights claim. As the Supreme Court recently held, a complaint must be dismissed pursuant to Fed.R.Civ.P. 12(b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007) (rejecting the traditional 12(b)(6) standard set forth in *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). The Court must accept as true all allegations of the Complaint and all reasonable factual inferences must be viewed in the light most favorable to plaintiff. *Worldcom, Inc. v. Graphnet, Inc.,* 343 F.3d 651, 653 (3d Cir.2003). The Court, however, need not accept inferences drawn by plaintiff if they are unsupported by the facts as set forth in the complaint. *See California Pub. Employee Ret. Sys. v. The Chubb Corp.,* 394 F.3d 126, 143 (3d Cir.2004) (citing *Morse v. Lower Merion School Dist.,* 132 F.3d 902, 906 (3d Cir.1997)). Nor must the court accept legal conclusions set forth as factual allegations. *Bell Atlantic Corp.,* 550 U.S. at 555, 127 S.Ct. at 1965 (citing *Papasan v. Allain,* 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)). "Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp., id.* Although the pleading standard in Bell Atlantic applies equally to civil rights claim, no heightened fact pleading is required. *See Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,* 507 U.S. 163, 168, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993).

*Plaintiffs' Allegations
and ACS's Challenge*

It is alleged that ACS violated Plaintiff's federal civil rights by misrepresenting

that (1) Plaintiff faced threat of impending legal action by Defendant (¶¶ 25-26) and that (2) ACS could suspend Plaintiff's vehicle registration. ¶ 27  To that allegation, Plaintiff adds that the Defendants were parties to a conspiracy to deprive Plaintiff of his civil rights. ¶ 29

ACS raises four objections to this count.  First, there is no allegation to support the claim that ACS was acting under color of law.  Second, there is no allegation that he was somehow deprived of a federally protected right.  Third, assuming that such a right is plead, there is no allegation as to how ACS deprived Plaintiff of that right.  Fourth, Plaintiff failed to allege that he availed himself of any non-judicial remedies afforded him.  ACS Motion, 6-9.

*Color of Law*

For purposes of alleging state action, the Supreme Court has "insisted that the conduct allegedly causing the deprivation of a federal right be fairly attributable to the State." *Lugar v. Edmundson Oil Co., Inc.*, 457 U.S. 922, 936, 102 S.Ct. 2744, 2753 (1982)  Determining "fair attribution" entails a two-part analysis.  *Id.*  "First, the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the state or by a person for whom the State is responsible."  *Id.*  "Second, the party charged with the deprivation must be a person who may fairly be said to be a state actor. This may be because he is a state official, because he has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State."  *Id*

There is nothing remotely resembling a nexus as between ACS's conduct and any governmental authority.  It is alleged that ACS operated under the "auspices" of that

10

entity, but there are no allegations offered to support that. All that is alleged is that ACS was collecting debts "for the local government" (¶ 24) and that ACS "made threats of legal action by the government." (¶ 25) Such allegations are either scant or so vague as to be meaningless. They certainly do not allege "state action."

*Deprivation of Right*

Next, the Court turns to the precise harm which has been alleged. A plaintiff must assert the violation of a federal right-not merely a violation of a federal law-to seek redress. *See Blessing v. Freestone,* 520 U.S. 329, 340, 117 S.Ct. 1353, 1359 (1997). The Court must therefore determine "whether the asserted individual interest ... is encompassed within the Fourteenth Amendment's protection of life, liberty, or property." *Elmore v. Cleary*, 399 F.3d 279, 282 (3d Cir.2005) (quoting *Alvin v. Suzuki,* 227 F.3d 107, 116 (3d Cir.2000)). Plaintiff alleges that ACS "worked a denial of her due process rights" by misrepresenting that Plaintiff faced threats of impending legal action and that his vehicle registration would be suspended. ¶¶ 26-27.

Plaintiff's due process claims are unsupported. All that ACS is alleged to have done is to send him dunning notices which, it is further alleged, have made threats of illegal conduct. Yet from the Complaint, that is all that has happened to Plaintiff. The letters may threaten illegal conduct but there is no indication that such conduct has occurred. As a result, there is no allegation of any denial of right or other harm suffered by the Plaintiff here. Accordingly, the Court finds that the Complaint fails to state a deprivation of right.

*Failure to Follow Processes*

To this ACS adds that the Complaints fails to state whether Plaintiff sought any

11

extra-judicial redress before filing suit. The United States Court of Appeals for the Third Circuit has made clear that "[i]n order to state a claim for failure to provide due process, a plaintiff must have taken advantage of the processes that are available to him or her, unless those processes are unavailable or patently inadequate." *Alvin,* 227 F.3d at 116. "[A] state cannot be held to have violated due process requirements when it has made procedural protection available and the plaintiff has simply refused to avail himself of them." *Id.* (quoting *Dusanek v. Hannon,* 677 F.2d 538, 543 (7th Cir.1982)(internal quotations omitted) and citing *Bohn v. County of Dakota,* 772 F.2d 1433, 1441 (8th Cir.1985)). "A due process violation 'is not complete when the deprivation occurs; it is not complete unless and until the State fails to provide due process.' " *Id.* (quoting *Zinermon v. Burch,* 494 U.S. 113, 126 (1990)). "If there is a process on the books that appears to provide due process, the plaintiff cannot skip that process and use the federal courts as a means to get back what he wants." *Id.*

There is no mention in the pleading whether Plaintiff sought some redress from within the parking authority.[10] Neither is there an allegation that what procedures are available are insufficient or non-existent. The Court finds, therefore, that this Complaint is also deficient in that respect.

*Civil Rights Conspiracy*

Aside from the substantive civil rights violation, Plaintiff charges the "Defendants both individually and/or jointly" with conspiring to deny Plaintiff's his right to due process. ¶ 29. Section 1985(3) of the Civil Rights Act permits an action to be brought

---

[10] ACS insists that the parking authority's website provides the public with such information but this Court makes no finding on that claim at this time.

by one injured by a conspiracy formed "for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws." 42 U.S.C. § 1985(3). The Supreme Court has made clear what a plaintiff must allege to state a claim under § 1985(3): "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is injured in his person or property or deprived of any right or privilege of a citizen of the United States." *United Bhd. of Carpenters & Joiners v. Scott,* 463 U.S. 825, 828-29, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983); *accord Oras v. City of Jersey City*, 2009 WL 840604 *2 (3d Cir.)

This conspiracy claim fails for two reasons. There is nowhere alleged any act in furtherance of the conspiracy. For that matter, the Complaint never informs ACS as to who the co-conspirators might be. Neither is there any allegation of a resulting injury. So to the extent that Count II asserts a conspiracy to violate civil rights, it is equally insufficient.

*Summary*

The Court finds that the Complaint fails to state a claim upon which relief may be granted under either the state or federal law claims asserted in Counts I and II. This effectively moots the alternative request for a more definite statement under F.R.C.P. 12(e).[11]

---

[11]A motion for more definite statement may succeed if a pleading is "so vague or
(continued...)

An appropriate Order follows.

By the Court:

*Stephen Raslavich* (signature)

Stephen Raslavich
Chief U.S. Bankruptcy Judge

Dated: September 10, 2009

---

[11](...continued)
ambiguous that the party cannot reasonably prepare a response." Fed.R.Civ.P. 12(e), made applicable by B.R. 7012(b).  The notice pleading standard imposed by the Federal Rules, merely "requires a plaintiff to provide the opponent with fair notice of a claim and the grounds on which that claim is based." *Kanter v. Barella*, 489 F.3d 170, 175 (3d Cir.2007).  Accordingly, "[m]otions for more definite statement are generally disfavored, and should [be granted only] if a pleading is unintelligible, making it virtually impossible for the opposing party to craft a responsive pleading." *Synagro-WWT v. Rush Twp., Pa.,* 204 F.Supp.2d 827, 849 (M.D.Pa.2002).